[See note to Case No. 6,532.]

## Case No. 6,535.

### HITCHCOCK v. ROLLO.

[3 Biss. 276; 2 Ins. Law J. 938; 4 N. B. R. 690; 4 Chi. Leg. News, 284.] [1]

Circuit Court, N. D. Illinois. June, 1872.

BANKRUPT ACT — ASSIGNEE — MUTUALITY — RULE IN EQUITY—PURCHASED CLAIMS — TWENTIETH SECTION BANKRUPT ACT CONSTRUED.

1. The assignee of a claim against an insolvent insurance company for loss under its policies, assigned after notice of insolvency, cannot set if off against his previous indebtedness to the company. The debts and credits are not ·mutual under the 20th section of the bankrupt act [of 1867 (14 Stat. 526)].

[Cited in Com.· v. Shoe & Leather Dealers' Fire & Marine Ins. Co., 112 Mass. 135.]

2. Such a set-off would be unjust and inequitable.

3. Though courts of equity follow the law in allowing ·or refusing set-off, special circumstances may control the equity.

4. An assignee of a claim seeking to establish a set-off should show, not merely that he is the nominal owner of the claim, but that he has good equitable grounds for relief.

5. It seems, that a debtor to an insurance company might set-off a claim purchased before the filing of the petition, in good faith and for value, if without notice of the insolvency of the company.

[Cited in Jenkins v. Armour. Case No. 7,260; Lloyd v. Turner, Id. 8,433; Mattocks v. Lovering, 3 Fed. 213.]

6. ·A court of equity should construe the 20th section of the bankrupt act in furtherance of the main purpose of the law, and not permit one creditor to inequitably obtain payment in full, to the sacrifice of the claims of the other creditors.

7. The language of that section does not foreclose a court of equity from disallowing a set-off when it would work injustice.

[Cited in Ex parte Perkins, Case No. 10,982; Rollins v. Twitchell, Id. 12,027.]

This was a bill by Charles Hitchcock against William E. Rollo, assignee of the Merchants' Insurance Co., to establish a set-off. This case, in many respects, resembles the case of Drake v. Rollo [Case No. 4,066], immediately preceding. The complainant, on the 15th of May, 1867, borrowed of the insurance company the sum of $20,000, paya-

1 [Reported by Josiah. H. Bissell, Esq., and here reprinted by permission. 4 Chi. Leg. News, 284, contains only a partial report.]

ble in five years, to secure which he gave his notes, secured by mortgage on real estate in Chicago. The insurance company was rendered insolvent by the Chicago fire of October 9th, 1871, at which time complainant held three policies of insurance against the company, amounting to $11,000, upon which there was a total loss, which was regularly proved up against the company and adjusted. The company had also issued a policy for $1,500 to the firm of Hitchcock, Dupee & Everts, of which complainant was a member, covering property owned by them, upon which there was also a total loss. The company was also indebted to the firm upon open account in the sum of $877. These firm losses were regularly proved up and adjusted, and the company issued to the firm their certificate of indebtedness for the amount, which certificate was, on the 27th of October, assigned and transferred to the complainant; but there was nothing to show that value was actually paid for the assignment. It was admitted that the complainant, at the time of the assignment of the claims to him, knew that the company was insolvent, and that proceedings in insolvency or bankruptcy were imminent. On the 17th day of November, 1871, a petition in bankruptcy was filed against the company in the district court of this district, upon which it was afterwards adjudged a bankrupt, and Mr. Rollo elected the assignee. This bill sought to set-off all of the above claims against the complainants' indebtedness to the company.

Charles Hitchcock, pro se.

A debtor for money borrowed may purchase the negotiable notes of an insolvent at any time before the filing of a petition in bankruptcy against him, and set them off under the 20th section of the act of 1867, notwithstanding he had notice of insolvency, and purchased for the purpose of making the set-off.

First—The purchase of such paper is a "giving of credit," which is mutual within the meaning of the bankrupt law. 2 Smith, Lead. Cas. 316, 317; Hankey v. Smith, 3 Term R. 507; Collins v. Jones, 10 Barn. & C. 777. The rule has never been questioned. In the following cases, cited by Mr. Hoyne in argument, viz.. Belcher v. Lloyd, 10 Bing. 310; Lackington v. Combes, 6 Bing. N. C. 71, and Fair v. McIver, 16 East, 130, it appeared that the parties claiming the set-off had no real interest in the notes, and the decisions proceed upon that ground.

Second—Such negotiable notes may be set-off under the bankrupt law. The only argument against the right is that "if allowed it violates the spirit and policy of the bankrupt law, defeats the equal distribution of the assets of the bankrupt, which it is the evident purpose of the act to accomplish, and, in effect, operates as a fraud on it." Congress has deliberately determined that the occasional failure of the chief purpose of the act in this way is on the whole a less evil than uncertainty as to the time within which credit may be given and set-off received. The earliest bankrupt law of England did not provide for the set-off of mutual debts or credits. This omission, as Lord Mansfield says, "shocked the sense of justice of mankind;" and in 1732, by 5 Geo. II. c. 30, § 28, the right of set-off was secured, "if the credits were given or the debts incurred at any time before the person became bankrupt." The act of bankruptcy was the limit after which credit could not be given. The act seems to have been considered subject to three objections: First —That a person might give the credit to a notorious insolvent at any time before an act of bankruptcy, and yet secure the set-off. Second—A person giving credit without notice of an act of bankruptcy might be deprived of his equitable right of set-off. Third—No limitation was fixed beyond which the giving of credit should not be called in question.

* No suggestion was ever made in the courts that it was possible to meet these objections by construction based on the spirit and policy of the bankrupt law. In 1806, by the act of 46 Geo. III. c. 135, § 3, the supposed objections were removed and the right of set-off was secured, notwithstanding a prior act of bankruptcy "provided the credit was given to the bankrupt two months before suing out the commission, or provided the person claiming the right of set-off had not, at the time of giving such credit, notice of a prior act of bankruptcy, or that he was insolvent or had stopped payment." Here for the first time a set-off was, in terms, denied, where the claimant had notice at the time of giving it that the party was insolvent, or had stopped payment. The American bankrupt acts of 1800 and 1841 contained no similar provision. See sections 10, 13, and 42 of act of 1800 [1 Stat. 24, 25, 33], and sections 2, 3, and 5 of act of 1841 [5 Stat. 442, 444]. This act was in force and administered according to its terms for twenty years, when in 1825, by act of 6 Geo. IV., only such persons were excluded from the benefit of set-off as had, when they gave the credit, notice of an act of bankruptcy. Hawkins v. Whitten, 10 Barn. & C. 221. The same provision is to be found in all the acts of Victoria. Under these acts the English rule, so far as allowing a set-off when credit was given, even with notice of insolvency, was made to conform not only to the former English but also to the American law. The uncertainties attending the judicial inquiry into "notice of insolvency" was found to be an evil, and therefore the provision was repealed. In a case arising out of the fire of October 9th, 1871, by which all insurance companies were rendered insolvent, there is no difficulty in fixing notice of insolvency; but rules of law are general,

and in the great majority of cases the greatest uncertainty and consequent injustice would attend the inquiry. Congress had these acts before it when the bankrupt law was framed. It is a matter of public history that the author of the act, Mr. Jenckes, of Rhode Island, had carefully studied the English legislation upon the subject. The act of 46 Geo. III. contained language appropriate to accomplish the purpose of excluding the right of set-off in such a case as that before the court and under discussion. The courts of England had held that the repeal of the language secured the right, notwithstanding known insolvency at the time the credit was given, and yet congress passed the law of 1867, omitting all provision on the subject. It was evidently the intention to fix a certain time, viz., the filing of the petition, after which credit should not be given with a view to set-off, and prior to which no inquiry should be made as to notice of insolvency. The statutes of Massachusetts have a similar history. The early acts provided for a set-off of all claims "existing at the time of the first publication of the notice of the issuing of the warrant." In 1855, in the case of Aldrich v. Campbell, 4 Gray, 284, it was decided that claims "purchased for a valuable but not a full consideration against a debtor in embarrassed circumstances, who afterwards obtained a certificate of discharge in insolvency," could be set-off. In the following year, 1856, the supposed evil was met by a law providing "that no set-off should be allowed of a claim purchased with reasonable cause to believe the debtor insolvent." These acts and decisions were before congress when the bankrupt act was passed. It is wholly improbable that congress, with attention addressed to the subject, as appeared by the 20th section, should not have used either the language of the Massachusetts act of 1856 or the act of George IV. if the provisions of those acts had been approved. It would seem that, congress having deliberately and intentionally failed to deny a set-off where the party had notice of insolvency, it should not now be urged that the courts should interpolate the language in the act, and that what was denied by congress should be accomplished by interpretation.

McCagg, Fuller & Culver, for defendant.

The main argument of the complainant in support of his right to set-off claims for losses adjusted and purchased since the bankruptcy of the company, against loans obtained from it, is founded upon the proviso to the first clause of the twentieth section of the bankrupt act as construed in Re City Bank, etc. [Case No. 2,742]. This clause ought not to be construed as giving authority to allow all claims purchased before the filing of the petition, but only as a prohibition against allowing any to be set-off which are purchased after that date, leaving those purchased before to be allowed or not as shall appear just and equitable according to the previously settled bankrupt law. The allowance of mutual credits is designed to protect parties who have dealt with each other, and to preserve their equities by requiring only the balance to be paid as shall appear to be due upon the account stated between them. It is not to be construed to allow a party, after adjusting his own claims and having been allowed his own equities, to purchase the claims of other parties and tack them on his own to increase his allowance, to the prejudice of the other creditors. The theory of set-off, both in equity and by the bankrupt law, is that the balance found due upon a statement of the accounts between the bankrupt estate and its debtors or creditors, shall be paid to the other by the debtor party, because that would be the result of the dealings between the parties if their transactions were consummated; but it would frustrate all the theory and equities of the law to allow one debtor of the bankrupt estate, after satisfying his own equities, to buy the claims of a party who was simply a debtor of the bankrupt estate from the beginning, and have them allowed in full to satisfy the balance found due after satisfying his own equities.

The complainant did not deal with the bankrupt upon a real or supposed understanding that the claims thus purchased should be set-off, and to allow them to be set-off in full would be to give him a preference over the creditors of the bankrupt estate. Such preference would be the creation of a right by operation of law, not in favor of either party to the assigned claim, but in favor of one who has had all his own equities allowed and adjusted, and who has purchased no equity from any one else, and would result in an inequitable extinction of his own debt, to the prejudice of the other creditors of the estate. For this reason and because the bankrupt law was framed upon the theory of preserving the equities of the bankrupt and those dealing with him in respect of their transactions, the claims purchased after the known insolvency of the bankrupt ought not to be allowed to be used to disturb and destroy the rights of the creditors of the estate. The complainant may take such a dividend on the assigned claims as the assignor was entitled to, but no more, for he only bought a legal claim to which no equity was attached, and having had his own equities allowed so far as his own dealings with the bankrupt are concerned, he ought to be satisfied, and the court ought not by construction to extend the law of set-off in his favor, and clearly the express provisions of the bankrupt act do not require it. The authorities founded upon former British and American statutes, and the general equitable rules of set-off do not allow this to be done. Smith v. Hill, 8 Gray, 572; Smith v. Brinkerhoff, 8 Barb. 519; 2 Story, Eq. Jur. §§

1435–1437; 2 Smith, Lead. Cas. Eq. 366, 373, 374, 378; Smith v. Brinkerhoff, 6 N. Y. 305; Lee, Bankr. 283; Clarke v. Hawkins, 5 R. I. 219; Wat. Set-off, 190–193; Dickson v. Evans, 6 Term R. 57; Ogden v. Cowley, 2 Johns. 274; In re Receiver of Middle Dist. Bank, 1 Paige, 584; Staniforth v. Fellowes, 1 Marsh. 184; Ex parte Hale, 3 Ves. 304.

Thomas Hoyne, for defendant.

Complainant claims to set-off a claim for loss under a policy of insurance which he purchased after knowledge of insolvency of the company, caused by the great fire of 1871. The dealings between the parties consisted of a single transaction, that of complainant in obtaining a loan—there were no mutual dealings; mutual debts or credits; no accounts; neither is the claim of complainant reciprocal, as it did not arise out of the same transaction. It is insisted that under the 20th section of the bankrupt law this is a mutual debt, or a mutual credit between the parties to this suit, which upon an account between them being stated, one debt shall or may be set off against the other, and the balance only shall be allowed or paid. In Ex parte Globe Ins. Co., 2 Edw. Ch. 625, as respects this doctrine of the mutual right to set off claims, the chancellor holds that they must be such as arise out of the mutual dealings of the parties in the course of their business. When parties have had dealings so as to produce mutual debts and credits or reciprocal demands, growing out of the same transaction, it is the balance only which exists as a debt. The doctrine of set-off presupposes that there have been mutual dealings or reciprocal demands between the parties, and the section of the bankrupt act speaks only of mutual debts and mutual credits between the parties, and expressly provides for the statement of the account between them, and after one debt is set off against the other it is only the balance of the account which is to be allowed. Thus the section provides for the set-off of a claim only in cases where the parties have had some mutual dealings, and when some account of such dealings exists. Out of such dealings the claim is to arise, and then when such account is stated, and one claim is set off against the other, the balance only becomes a mutual debt or credit. Thus the section is in full accord with the nature of all set-offs, to which the whole doctrine of set-off is applicable. And besides this, this construction is in full accord with the policy of the bankrupt law, which recognizes only bona fide dealings; not contrived to work injustice or fraud, or to secure by any intrigue the preference of one creditor over another. The same construction is placed upon the English statute, although the language of the act is different from ours. Hawkins v. Whitten, 10 Barn. & C. 217, 21 E. C. L. 101; Fair v. McIver, 16 East, 130; Lackington v. Combes, 6 Bing. N. C. 71, 37 E. C. L. 515. In any case, if it appears that the claim to be set off is the result of a mere contrivance or color to make it appear that defendant was a bona fide holder of the claim, it is treated by the English courts as a fraud upon the act. Lackington v. Combes, 6 Bing. N. C. 71; Smith v. Hill, 8 Gray, 572; Howe v. Snow, 3 Allen, 113; Smith v. Brinkerhoff, 8 Barb. 519; Ogden v. Cowley, 2 Johns. 274; Dickson v. Evans, 6 Term R. 57. In Ogden v. Cowley, 2 Johns. 274, Chief Justice Kent remarks: "It would be unjust if one person who happened to be indebted to another at the time of his bankruptcy were permitted by any intrigue between himself and another so to change his own situation as to diminish or totally destroy the debt due to the bankrupt by an act ex post facto." Any act which tends to defeat the purpose and policy of the law, and which is done in contravention of and with intent to defeat such policy and purpose is a fraud upon the bankrupt act. Bump, Notes, 455; Samson v. Burton [Case No. 12,285]; In re Gregg [Id. 5,797]. See Wat. Set-off, § 182, citing 8 Barb. 519. It would be difficult to conceive of a case where the injustice would be greater or the intention more manifest to defeat the purpose of the act, and where there was so little pretence of mutuality of dealing as in this case. The policy of insurance was purchased after it became known the company was insolvent—where there had been no dealing, no account kept, and where the claim was purchased after insolvency, with a view to pay a debt due a bankrupt, thus allowing the debtors to purchase in claims at 25 per cent. or less, paying their own claims at par, and exhausting the estate of the general creditors.

The next claim to set-off arises out of the relations of the stockholder to the company. Can the stockholder who is indebted upon his stock for nonpayment of his share or shares set off a debt due him from the company, before his own debt to the company be first paid in full?

1. There are some axioms of equity law which make this claim of the stockholder utterly inadmissible. The creditor must be first paid. In all associations of partnership, joint stock, or corporate organization, the capital is held to be pledged for the payment of the general creditor. The capital is a trust fund. If this fund has been distributed, so that it is in the hands of the stockholders, or in the hands of others than bona fide creditors, or purchasers, leaving debts unpaid, such holders take the property charged with the trust in favor of the creditors.

2. The capital stock of a corporation is a trust fund, for payment of debts of the corporation. Creditors have a lien, or right of priority upon it in preference to any of the stockholders, and no stockholder can entitle himself to any dividend or share of the capital stock until such debts are paid. 2 Story, Eq. Jur. § 1252; Curran v. Arkansas, 15

How. [56 U. S.] 307; Mumma v. Potomac Co., 8 Pet. [33 U. S.] 281; Nathan v. Whitlock, 3 Edw. Ch. 215, 9 Paige, 152; Lawrence v. Nelson, 21 N. Y. 158. In Hillier v. Allegheny Co. Mut. Ins. Co., 3 Pa. St. 470, it is expressly held that where the funds were not adequate to pay all losses occasioned by a fire which had occurred, the entire funds belong to the losers. The stockholder who is liable for unpaid installments cannot set off his loss, but must first pay in his capital, and then he shares pro rata with other losers. Long v. Penn Ins. Co. 6 Pa. St. 421; Osgood v. Ogden, *43 N. Y. 70; Lawrence v. Nelson, 21 N. Y. 158; Vose v. Grant, 15 Mass. 505; King v. Fowler, 16 Mass. 397; Wood v. Dummer [Case No. 17,944].

John Borden, also for the set-off, cited, in addition to cases cited by other counsel, the case of Young v. Bank of Bengal, 1 Deac. 622, where the doctrine of mutual credits is elaborately discussed by Lord Brougham, and numerous authorities commented on.

Before DRUMMOND, Circuit Judge, and BLODGETT, District Judge.

DRUMMOND, Circuit Judge. The only point not decided in the previous case is as to the claim assigned to the plaintiff. It is admitted that the plaintiff, at the time of the assignment, knew that the company was insolvent, and that proceedings in insolvency or bankruptcy were imminent.

There are two questions which we may consider in this case, as they have both been argued, and exist either together or separately in several of the cases which were taken up at the same time. 1st. Can the claims assigned be allowed as a set-off? And, 2d. Does the knowledge which a person had of the pecuniary condition of the company, and the probable consequences growing out of the same, affect the right of set-off?

As to the first question: If the debt of the plaintiff were due, and no assignment had been made, in a suit brought against the plaintiff, he could not set-off the claim due on the policy to him and his two partners, because that would make the partners liable for the individual debt of each member of the firm. Dehon v. Stetson, 9 Metc. [Mass.] 341; Wat. Set-off, § 222, and the authorities there cited. If the case were reversed, and suit were brought by the plaintiff and his partners on the policy against the company, the latter could not set-off the debt due from the plaintiff. In each instance there is wanting that mutuality which the statute requires, and the debts exist in different rights. If the joint claim had become vested in the plaintiff, so that he could have brought suit in his own name, it might be different. Columbian Ins. Co. v. Black, 18 Johns. 149; Parker v. Beasley, 2 Maule & S. 423.

The case of Tucker v. Oxley, 5 Cranch [9 U. S.] 34, was cited and relied on at the argument. A firm had been dissolved and the partnership assets had passed to one of the firm, who had become bankrupt. The assignee brought suit against two persons on a debt due the bankrupt. They were allowed by a majority of the court to set-off a debt previously due to them from the firm. This was the ruling under the peculiar wording of the bankrupt law of 1800 [supra], and seems to be an exceptional case.

It is very doubtful whether that would be proper, under the present bankrupt law, which contains provisions as to the distribution of the joint and separate estate of partners, not in the law of 1800.

An assignee of a firm brought an action on a debt due the firm. It was held, by the supreme court of Massachusetts, that the defendant could not set-off a debt from one of the partners. Williams v. Brimhall, 13 Gray, 462.

Courts of equity follow the law in allowing or refusing set-offs, qualified by the rule that special circumstances may control the equity. 2 Story, Eq. Jur. 1437.

What are the special equities of the plaintiff? He alleges that the debt owed by him is not yet due; that the company is insolvent and in bankruptcy, and that the firm claims against the company were assigned to him with knowledge of the insolvency. If we concede that an assignment by the other partners might give the plaintiff the right to a set-off, we think it is incumbent on him, when he comes into a court of equity and seeks to have the assigned claims allowed as a set-off, to show that he is more than the nominal owner. In other words, his equitable grounds for relief should be clearly established. From all that appears in this case, the fair inference is that these claims were merely transferred to enable the holders of the fifteen hundred dollar policy to realize their claim in full out of an insolvent corporation. No special equities within the true meaning of the rule are shown.

As to the second and more important question—the words "mutual debts," and "mutual credits," used in the 20th section of the present bankrupt law are not essentially different from those to be found in most of the previous bankrupt laws of England and of this country, subject to various conditions and limitations. And the argument is that the court cannot go outside of the language of the section, and that if it is a mutual debt, or a mutual credit, it can in all cases be set-off, except when it is a claim in its nature not provable against the estate, or one purchased by or transferred to the bankrupt's debtor after the petition in bankruptcy is filed, those only being excluded by the terms of the law. And in support of this position, the case of Hawkins v. Whitten, 10 Barn. & C. 217, decided under the English bankrupt law of 6 Geo. IV., was relied on. The question there was, whether the defendant had the right to set-off notes of the bankrupts obtained by him after he knew that the bankrupts,

who were bankers, had stopped payment, but before he knew that an act of bankruptcy had been committed? And the court decided that he had such right, although he might have reason to believe them to be insolvent.

But the case was decided under a statute which had omitted the words of a previous statute, which declared that the set-off should not be allowed where the party had obtained the claims against the bankrupt after he stopped payment. The omission of such words where the law had been substantially re-enacted, with that exception, was an argument well nigh irresistible in favor of the construction given by the court, notwithstanding Lord Tenterden significantly asked whether it would not be a fraud on the bankrupt law.

It is said that in view of such a decision as this and of the English bankrupt laws, the twentieth section of our bankrupt law in making only two exceptions to the right of set-off in the case of mutual debts or credits —one a claim not provable against the estate, and the other a claim obtained after the filing of the petition—intended to allow all others. That principle goes very far, and we are not prepared to admit it to that extent. We believe many cases may be imagined where a court of equity would not permit a set-off, although not within the exceptions. For example: a person might have borrowed the whole capital of the insurance company, and be on the way to its treasurer to pay it, and meet a creditor who informed him he had a petition in his hands ready to be filed in the district court, and alleging the undoubted fact of the bankruptcy and insolvency of the company. In such case, if he had taken the money to buy up claims against the company at ten cents on the dollar, would equity allow the set-off because the petition was not then actually filed?

The case supposed is within neither of the exceptions of the twentieth section, and yet we cannot doubt that it would be the duty of a court of equity to disallow a claim of set-off which would thus permit a debtor to absorb the whole capital of the company by credits so purchased, for the reason that it would be unjust, and a substantial fraud on the bankrupt law.

The object of all general rules applicable to the rights of persons should be to promote the greatest good. It is upon that principle that the bankrupt law rests—the equal division among all creditors of the property of an insolvent company or individual.

We are called on to make the application of principles—not in a solitary case here and there, but under circumstances calculated to bring to a crucial test the soundness of rules —the insolvency and bankruptcy of numberless insurance companies whelmed in a common ruin, and where, if the doctrine contended for by the plaintiff is maintained, a comparatively few persons holding all their assets, amounting to millions, can retain them by going into the market and purchasing, with full knowledge of all the facts, claims against them for a nominal sum.

But one decision under the bankrupt law of 1867 [supra], was cited on the argument having a bearing on the point now under consideration,—In re City Bank of Savings [Case No. 2,742], by the district judge of California. It was held in that case that the fact that the creditor of the bankrupt at the time he assigned his claim to a debtor, had reason to believe the bankrupt to be insolvent, did not prevent the debtor from setting off against the debt the claim thus assigned. The report of the case does not state explicitly whether the debtor, at the time of the assignment, knew of the insolvency of the bankrupt, but perhaps it may be an inference that such was the fact.

The court overruled the objection that the effect of allowing the set-off would be a fraud on the law, and seemed inclined to give an absolutely literal construction to the twentieth section, while admitting that the result would be to enable one creditor to obtain full satisfaction of his claim to the prejudice of other creditors.

We admit that this may be so, if there is good faith. We do not doubt that a debtor can purchase a claim against the creditor, at any time before the filing of the petition in bankruptcy, and set it off, provided the purchase is made without notice of insolvency, for value, fairly, and not in fraud of the law; and we thus give full effect to the statute.

If the case decided in California intended to sanction a set-off such as is claimed here, we do not feel inclined to adopt the rule there stated. We hold it to be the duty of a court of equity so to construe the twentieth section as not to suffer it to defeat the main purpose of the bankrupt law, or to permit one creditor in this way to obtain the payment of his claim in full, to the sacrifice of the claims of other creditors.

It is said that there must be some time fixed within which doubtful transactions can no longer be questioned. It is for a court of equity, or the bankrupt court in the exercise of its equitable powers, to decide, looking at all the circumstances of the case, under what limitations the right shall be placed.

Our attention has been directed to a case not cited on the argument,—Smith v. Hill, 8 Gray, 572. In that case the defendant purchased claims against a person, knowing him to be insolvent, and having reason to believe that he was about to be put into insolvency; and then, in a suit by the assignee, proposed to set off these claims against a debt he owed the insolvent. Under the statute mutual debts and demands could be set off; but the court held that the effect of allowing the set-off would be to interfere with the proper distribution of the estate of the insolvent, and would be contrary to the spirit of the insolvent laws; that it would enable a debtor to give a preference to such of the cred-

itors as he might favor, and would allow debtors to pay their debts by purchasing claims against the insolvent at a discount.

And that decision was not made under amendments which had expressly prohibited such set-off, but independently of them, and on the general ground that it would be inequitable to permit the set-off. We think the principles of that case are applicable to this, and that they constitute a true test to determine whether the set-off claimed here should be allowed. See Hill. Bankr. 224, who adopts the principle of Smith v. Hill; Avery & H. Bankr. 157; Wat. Set-off, 141.

We are of the opinion, therefore, on both of the grounds stated, that a set-off is not allowable. In construing our bankrupt law we have to regard it as a whole system—framed, doubtless, at that time in view of previous laws, both English and American; but where it was impossible to include all the various circumstances and contingencies which had given occasion to the numerous alterations and modifications of previous laws, and this is especially true of the twentieth section in relation to set-off.

Notwithstanding the language there is general, and only two exceptions are named, we must still think that it did not intend, outside of these exceptions, to foreclose a court of equity from disallowing a set-off when it would on the whole work injustice.

We think, therefore, we are at liberty to place such construction on our bankrupt law as is in harmony with the common sense of equity; and that such a set-off as the one claimed here ought not to be permitted, is abundantly manifest from the whole tenor of recent legislation, both English and American. We confess we think we go quite far enough, which we do in obedience to authority, when we admit that a man may borrow a part, or even the whole, of the capital of an insurance company, and then take out policies of insurance, it may be because of the loan, and in case of loss and insolvency of the company, set off the loan against the loss on the policy, even though it may leave other creditors with nothing. There may be instances where this can be done, when it would be difficult to reconcile it with our notions of a sound morality, or with that rule which requires us to do to others as we would have them do to us.

But we do not feel inclined to go further, and adopt a rule which would permit the debtors of a bankrupt company thus to realize, for a nominal sum, the full amount of their claims on the company, while other creditors thereby go empty-handed.

As to the assigned claims the set-off will not be allowed.

NOTE. Consult Drake v. Rollo [Case No. 4,066]; Sawyer v. Hoag [Id. 12,400]; and for a full discussion of the right of set-off as against liability on stock subscription, and money received as treasurer, see Scammon v. Kimball [Id. 12,435], Sept., 1873. For the general question of liability on stock sub-

scriptions, after bankruptcy of the company, consult Upton v. Hansbrough [Id. 16,801]; Upton v. Burnham [Id. 16,799], and cases there cited. For opinion of supreme court in the set-off cases, affirming decree of the court below, consult Sawyer v. Hoag [17 Wall. (84 U. S.) 610.]