In re KYTE.

(District Court, M. D. Pennsylvania.   October 19, 1910.)

No. 1,681.

1. BANKRUPTCY (§ 326*)—CANCELLATION—SET-OFF.
    Where certain mechanics and materialmen, constructing a building for a bankrupt, had claims for which they were entitled to liens, such liens were not canceled, either in whole or in part, by several book accounts for

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

supplies furnished by the bankrupt to the lien claimants; the right of set-off being permissive, and not obligatory.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 326.*]

2. BANKRUPTCY (§ 178*)—MECHANICS' LIENS—FRAUDULENT ASSIGNMENT.

A bankrupt owned a building subject to mechanics' liens amounting to over $2,000. He also held book accounts against the lien claimants amounting to nearly $1,800. The bankrupt's two sons, who clerked for him, knew he was in financial extremity, and a few days before he executed an assignment for the benefit of creditors the sons purchased the mechanics' liens, and with the money the lien claimants paid the bankrupt the book accounts. There was no claim that the sons bought the liens to relieve their father from financial pressure, nor were the claims purchased at a discount. There was also no sufficient showing as to the source from which the sons procured the money with which to purchase the claims; the property of one being heavily mortgaged and the other being only a few years out of college. *Held*, that such assignments, other than a claim against which there was no counter book account, were collusive and fraudulent, and that the liens were not valid in the hands of the sons, as against the rights of the bankrupt's general creditors.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 178.*]

In Bankruptcy. In the matter of bankruptcy proceedings against F. K. Kyte. On exceptions to the report of a referee making distribution on a sale of real estate. Exceptions sustained.

See, also, 174 Fed. 867.

W. H. Goodwin, for trustee.

O. F. Harvey, Jr., for mechanics' liens.

ARCHBALD, District Judge. The trustee excepts to the allowance of certain mechanics' liens entered against the bankrupt's property, which are now held, by assignment from the original claimants, by W. H. Kyte and O. Y. Kyte, two sons of the bankrupt. These liens were for work and materials that went into the enlargement of the bankrupt's store building, and all but one were subject to set-offs on book accounts for material sold by the bankrupt out of the store to the original claimants. But, instead of these accounts being used to reduce the claims, the claims were taken over by the sons, and the bankrupt collected the accounts, and then made an assignment for the benefit of creditors. It is charged that this was a collusive arrangement, and that the sons, to whom the claims were assigned, take nothing in consequence.

The facts with regard to the several liens are as follows:

A. G. Holl had a claim of $90, which was paid by check of O. Y. Kyte, September 3, 1907, and a lien entered for it September 5, in the name of the claimant, by the attorney of O. Y. Kyte; the assignment of the lien being executed September 13, 1907, but not recorded until February 5, 1908, nearly six months afterwards. Against this claim there was no counter book account.

B. Manganiello had a claim of $544.09, which was entered in the same way September 5, 1907, and an assignment executed to O. Y. Kyte September 6, which was filed September 27. The lien was drawn up and sworn to on August 27, and the same day the claimant

was paid by check of O. Y. Kyte, and the next day he paid his book account to the bankrupt, amounting to $243.16. There was also an account against him for the month of August, amounting to $58.25, which he paid to the bankrupt September 7, the day after the latter had made a general assignment for the benefit of creditors to one Robert Taylor.

The Drury Manufacturing Company had a claim of $198.83, which was paid by check of O. Y. Kyte September 5, and an assignment executed to him September 6, the lien being entered October 22, in the name of the original claimant, and the assignment not being recorded until February 8 following. The book account against this company amounted to $359.96, and was paid by check bearing date August 31; but, by the indorsement on this check and the one by which the company was paid for its lien, the two were evidently put through the bank on September 6, together.

C. C. Garrison had a claim of $129, which was entered September 5, 1907, and assigned to O. Y. Kyte September 6; the assignment not being recorded until February. This claim, although amounting to $129, was bought up by O. Y. Kyte for $115, and a check for that amount given by him August 31, the date that the statement of lien was drawn up and sworn to. And on September 3 the claimant gave the bankrupt his check for the same amount, $115, which was credited on his book account. There was a small balance, $11.06, which remained unsettled, of which no account seems to have been taken.

John J. Reilly had a claim of $724, which was duly entered September 5, 1907; the statement of lien having been prepared and sworn to August 28 preceding. Against this claimant there was a book account due the bankrupt of exactly the same amount, notwithstanding which fact, on August 30, he was paid by check of O. Y. Kyte to the order of W. H. Kyte, the other son, for $724, and this identical check was indorsed over to the bankrupt, in payment of the book account. This lien was assigned to W. H. Kyte; the assignment being executed September 30, but not put on record until February 8, like some of the others. W. H. Kyte testifies that the money represented by the check of O. Y. Kyte, which was used in the transaction, was his money, which was in bank in the name of his brother, and in order to make the account good for it he put $300 that day into the bank, going to his house to get it, which, with $150 previously deposited on August 13, and $275 also on August 30, together made up $725. The $150 put in on August 13 was a check of the bankrupt to O. Y. Kyte, and was said to be for wages, and there was also another check of like amount, which went into the account, and was said to have also been for wages due W. H. Kyte, his brother.

William Myers had two claims. The statement of lien for the first one, which was $311.37, was made out and sworn to August 26, 1907, and entered up September 5, and the same day assigned to W. H. Kyte, although the assignment was never recorded. There was an account against this claimant on the books of the bankrupt, amounting, after certain allowances, to $294.54, on which there was paid $287.36, leaving a small balance of $7.18, which was carried forward. This payment was by check bearing date July 23, but was evidently not

made until some time along in August, credit being given for it on the August 1 statement.

The second claim was for $53.43, for work done after the other, and was filed October 22, and assigned to W. H. Kyte October 29; the assignment, the same as the other, never being put on record. There was also a further book account against this party for goods sold in August, which, with the balance carried forward from July, amounted to $61.20. And this, on September 6, was receipted in full by the bankrupt. The aggregate of the two mechanics' liens and of the two book accounts, it will be noted, closely approximate.

The referee allowed these claims, holding that the book accounts against the claimants did not operate to cancel them, whatever right there may have been to a set-off. And he also accepted the testimony of W. H. Kyte and O. Y. Kyte that they had paid for the claims with their own money. It was recognized that the existing conditions required close scrutiny, but nothing, as it was said, had been shown to warrant the claims being rejected.

It was correctly held that the mechanics' liens were not canceled in whole or in part by the several book accounts against them; the right of set-off not being obligatory, but permissive. But that is not the question. The case is not to be resolved on the basis of set-off, but collusion. And that there was connivance between the father and his sons there can be no doubt in the mind of any one who looks into this record. A comprehensive view must be taken, and it shows this condition: Two sons of a bankrupt father, who clerk for him and know perfectly well his financial extremity, a day or two before he executes an assignment for the benefit of creditors, buy up mechanics' liens against his real estate to the amount of over $2,000, against which, if directly settled between the original claimants and the bankrupt, there would be set-offs on book accounts, amounting to nearly $1,800, the mechanics' liens, however, in the hands of the sons, being good against the real estate, and, having been got out of the road in this way, the father is enabled to realize on the book accounts, which are thus abstracted from what would otherwise be available for the benefit of creditors. It goes beyond the range of human credulity to believe that this was not a collusive scheme between the bankrupt and his sons, arranged for this very purpose. That was the natural effect of it, and the presumption is that it was so intended. But, without regard to presumptions, that is the only thing to be made out of it. There was absolutely no object in taking over these mechanics' liens, except as it let the bankrupt get the benefit of the book accounts. It is not pretended that they were bought up by the two sons to relieve their father from financial pressure. An assignment for the benefit of creditors was in contemplation, and immediately followed, almost before the liens were taken care of, but not before the bankrupt had collected in the book accounts, although one of them was even receipted for after that. Nor were the mechanics' liens bought by the sons in order to protect their individual interests, of which they had none. Nor were they buying at a discount, so as to make it an inducement. No explanation in fact is offered, and we are left, therefore, to draw our own conclusions. The present claimants simply stand on the proof

that they have paid for them and hold assignments. That they gave their checks is true. And they undertook, to a certain extent, to show that they had the money. But, except their mere say-so, they did not prove it, and, considering their circumstances, it is altogether improbable; the property of the one son being heavily mortgaged, and the other son being only a few years out of college. Indeed, the only thing they pretend to have is their wages, on the strength of which they attempt to justify some $300, which went into the purchase of the Reilly claim; this money being got the same day directly from their father. This and the $300, which W. H. Kyte says that he went home and got, to make the Reilly check good, is all as to which there is anything specific. And this falls far short of the $2,000, which was necessary to take up the mechanics' claims that are now asserted. The relationship here is close, and the opportunity for collusion is such that the parties are held to a strict degree of proof, which this does not begin to satisfy.

Nor is this all with which the claimants are confronted. In one case, the very check which the sons paid for a claim is traced directly into the pocket of their father. It so happened that the amount due Reilly on his lien, $724, was the exact amount of the book account which he owed the bankrupt, and to take up this claim a check for $724 was drawn August 30 by O. Y. Kyte, in favor of W. H. Kyte, who indorsed it over to Reilly, and Reilly, in turn, the same day, indorsed it over to the bankrupt to pay his book account. The money required to make this check good, also, except $150, was all deposited that day, and $300 of it admittedly, whether wages or not, was furnished by the bankrupt. It is difficult to conceive anything that could be more significant.

Not quite so marked, but still in line with it, are the checks which passed in the Garrison case. Garrison had a claim for $129, and there was a book account against him of $115. Payment for this lien was made by O. Y. Kyte, by check dated August 31 for $115, the day the statement of lien was drawn up and sworn to, which check was deposited in bank September 3, and the same day Garrison gave a check to the bankrupt for a like amount to settle his book account. It will be noted that what was paid for the lien was not the full amount of it, but was just the amount of the book account, and that payment of the one immediately followed on the payment of the other, and must have been arranged for.

So, in the Manganiello case, the claim, which was $544.09, was paid by check of O. Y. Kyte August 27, the day the statement of lien was sworn to, and the next day Manganiello paid his book account, $243.16. There are also certain coincidents of time, if not of amounts, in the Drury and Myers cases, of more or less significance. The Holl case is the only one that escapes imputation, there being no book account against it.

The case so made against these claims has already been indicated, and need not be repeated. If they were honestly acquired by the present parties, with their own money, they are to be respected. But that is not the view I feel compelled to take of them. The inability of the claimants, the time and manner of acquiring them, the results to the

bankrupt, and the checks traced home to him, all point to the contrary. Had the bankrupt made use, by way of set-off, of the book accounts which he held to settle the mechanics' liens against him, they would have been reduced to some $200 or $300, leaving that much more to be got out of his real estate for general creditors. As it is, the real estate was allowed to continue burdened down with liens to the extent of over $2,000 beyond the mortgage against it, which might and ought to have been taken care of, while the bankrupt, by the arrangement, secured nearly $1,800 out of the book accounts, which were withdrawn in this way from the reach of creditors. The fraud is rank, and cannot be disguised, and the claimants, being parties to it, can take nothing by their assignments. I will allow the Holl claim, because there was no book account against it. It was probably considered necessary to the scheme, and taken over as a part of it. But, without a counter book account, all that can be said of it is that it is found in bad company, which perhaps is not sufficient.

The exceptions are sustained, and the case sent back to the referee, with instructions to disallow all but the Holl claim.