## CARR *v.* HAMILTON.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR
THE WESTERN DISTRICT OF LOUISIANA.

No. 105. Argued December 4, 1888. — Decided January 28, 1889.

When a life insurance company becomes insolvent and goes into liquidation, the amount due on an endowment policy, payable in any event at a fixed time, and sooner if the party dies before that time, should, in settling the company's affairs, be set off against the amount due on a mortgage debt from the holder of the policy to the company, by way of compensation or reconvention.

When a life insurance company becomes insolvent before the time fixed for the termination of an endowment policy, payable to the holder in case of survival until that time, or to his children in case of his death before it, the contingent interest of each party is fixed by the insolvency, to be determined by the tables ordinarily used for that purpose.

Where a holder of a life policy borrows money of his insurer, it will be presumed *prima facie*, that he does so on the faith of the insurance and in expectation of possibly meeting his own obligation to the company by that of the company to him.

*Newcomb* v. *Almy*, 96 N. Y. 308, disapproved.

BILL IN EQUITY to foreclose a mortgage. The case is stated in the opinion.

*Mr. Afred Goldthwaite* for appellant.

*Mr. N. C. Blanchard* for appellee. *Mr. R. J. Looney* and *Mr. T. Alexander* were with him on the brief.

MR. JUSTICE BRADLEY delivered the opinion of the court.

This case arises out of a policy of life insurance, dated July 14, 1869, granted by The Life Association of America, a corporation of the State of Missouri, to William E. Hamilton, the appellee, of Shreveport, Louisiana, upon the life of said Hamilton; and also out of a mortgage given by said Hamilton to the said association, for a loan of money; and the main question is, whether the amount due on the policy ought to be set off by way of compensation or reconvention against the amount due on the mortgage.

The policy was not an ordinary one, payable only at the termination of the life insured, but was what is sometimes called an endowment policy, payable at a certain time at all events, or sooner if the party should die sooner; and the premiums were all to be paid within a certain limited time, to wit, ten years. By the terms of the policy, in consideration of $877.80, paid by Hamilton, trustee, and of the annual payment of a like amount on the 14th of July, every year, for nine years thereafter, the association assured his life in the amount of $10,000, payable to him or his assigns, on the 14th of July, 1884; or, if he should die previously, payable to his children, naming them.

By the rules of the association, the insured was only required to pay two thirds of the annual premium in cash, and had the option of a credit or loan for the other third, paying the interest thereon at eight per cent per annum. Hamilton availed himself of this privilege of credit, and made all the cash payments required for the whole ten years. His premium loan amounted in 1879, when the association failed, to $2372.90, and the equitable value of his policy, at that time, was

$7779.95; leaving in his favor the sum of $5407.05. This is the amount which he contends should be allowed to him by way of compensation or reconvention against his mortgage debt due to the association.

The mortgage debt referred to arose as follows: In March, 1870, Hamilton borrowed of the association the sum of $3850, — being, as he contends, entitled to such loan as a policy holder, and which he would not have made but for his being such policy holder. To secure the payment of this loan he gave his promissory note for $3850, dated 11th of March, 1870, and payable twelve months after date with eight per cent interest after maturity; and to secure the note he gave a mortgage of same date on certain lots and buildings in Shreveport, Louisiana. The mortgage contained the usual *pact dé non alienando*, and was recorded 11th March, 1870, and reinscribed 28th May, 1881.

By an amended charter of the association, approved October 2d, 1869, it was authorized by its directors to form separate departments and branches in the different States, with separate organizations of directors and officers, but having a general connection with the parent compan7; and it was provided that each department should have the management and investment of the funds received therein. Under this charter a separate department was made of Louisiana and Texas, and Shreveport was one of the districts of this department. The loan made by Hamilton, who resided in Shreveport, was made, as he testifies, from the funds raised from the business of the association in that district.

The Insurance Association became insolvent in 1879, and on the 13th of October, in that year, proceedings were instituted against it by the Superintendent of the Insurance Department of Missouri, under the laws of that State, for the liquidation of its affairs, and such proceedings were had that on the 10th day of November, 1879, a decree was made by the Circuit Court of the city of St. Louis, (having jurisdiction of the matter,) declaring that the association was insolvent and that its condition was such as to render its further proceedings hazardous to the public and to its policy holders, and that the

association be dissolved, and its officers and agents enjoined from exercising any control over its property or affairs, and from the further continuance of its business of life insurance. The decree further proceeded to vest the title to all the property and assets of the association in the Superintendent of the Insurance Department of the State, to hold and dispose of the same for the use and benefit of the creditors and policy holders of the institution; and its officers were directed to convey, assign and transfer all its property and assets to the said superintendent. In short, the association was put into a condition of absolute bankruptcy and liquidation.

In June, 1883, the Insurance Superintendent of Missouri for the time being, finding Hamilton's note and mortgage amongst the assets of the Life Association, filed a petition for executory process, in the Circuit Court of the United States for the Western District of Louisiana, for the seizure and sale of the property covered by the defendant's mortgage before referred to; and afterwards filed a bill of foreclosure against Hamilton, the appellee. The latter, besides an answer, filed a cross-bill, setting up the amount due on the policy of insurance by way of compensation and reconvention. It is conceded that the interest was paid on the mortgage debt up to March, 1879; and there is no question that the equitable value of the policy in November, 1879, was, as before stated, $5407.05 after deducting all deferred premiums. This was more than enough, by over $1300, to pay and satisfy the mortgage. The question is whether the appellee is entitled to such compensation or reconvention.

Natural justice and equity would seem to dictate that the demands of parties mutually indebted should be set off against each other, and that the balance only should be considered as due. But the common law, for simplicity of procedure, determined otherwise, and held that each claim must be prosecuted separately. "The natural sense of mankind," says Lord Mansfield, "was first shocked at this in the case of bankrupts; and it was provided for by 4 Ann. c. 17, § 11, and 5 Geo. II. c. 30, § 28." *Green* v. *Farmer*, 4 Burrow, 2214, 2220, cited in 2 Story's Eq. Jur. § 1433; *S. C.* 1 W. Bl. 651. In pursuance

of these old statutes, and of the dictates of equity, the principle of set-off between mutual debts and credits has for nearly two centuries past been adopted in the English bankrupt laws, and has always prevailed in our own whenever we have had such a law in force on our statute book; and it mattered not whether the debt was due at the time of bankruptcy or not. See Babington on Set-off, 118; *Ex parte Prescott*, 1 Atk. 230, 231; Bacon's Abridg. tit. Bankrupt (K); Acts of Congress 1800, c. 19, § 42, 2 Stat. 33; 1841, c. 9, § 5, 5 Stat. 445; 1867, c. 176, § 20, 14 Stat. 526; Bump on Bankruptcy, 10th ed. 91. It is difficult to see why this principle of justice should not apply to persons holding policies of life insurance in a company which becomes bankrupt and goes into liquidation. By that act the company becomes *civiliter mortuus*, its business is brought to an absolute end, and the policy holders become creditors to an amount equal to the equitable value of their respective policies, and entitled to participate *pro rata* in its assets. If any one is indebted to the company, especially if his debt was contracted with reference to, and because of, his holding a policy, there would seem to be strong reason for allowing him a set-off, and no good reason to the contrary.

One objection raised against the allowance of set-off, or compensation, in the present case, is that when the Life Association became insolvent, and when the present suit was commenced, the insurance had not become absolute in Hamilton, and did not become so until July 14th, 1884, — previous to which time his children had a contingent interest therein, they being the beneficiaries in case he should die before that date. But this reason cannot be sound; for a settlement of the company's affairs cannot be postponed to await the determination of every contingency on which its policy engagements are suspended. This would postpone a settlement for at least half a century. Every person's interest in life insurance is capable of instant and present valuation, almost as certain and determinate as the discount of a note or bill payable in the future. Tables of mortality and of all values dependent thereon are adopted by every company, and furnish an assured basis of computation for this purpose. The table used by the

Life Association of America is set out in the record, and other tables based upon it are used to facilitate the calculations desired.

Another reason urged against allowing a set-off in this case is, that the defendant, Hamilton, holds the policy as trustee, and cannot set off his claim as trustee against a debt due in his own right.

This argument has no better foundation than the other. Hamilton was only trustee so far as his children were interested; he could not be trustee for himself; and his interest was separate from theirs. The value of each was easy of calculation by any competent actuary. The policy had less than five years to run, and the interest of his children was contingent upon his dying within that time, he being then fifty-one years of age. Calculated according to the American table of mortality annexed to the charter of the association and contained in the record, at five per cent compound interest, (the usual rate assumed,) the value of the children's interest was less than seven per cent of the total insurance, or less than $700; whilst the value of Hamilton's interest was more than seventy per cent of the insurance, or more than $7000.[1] Or, first deducting from the whole present value of the policy (which at five per cent per annum for five years deferred is $7835.26) the amount due for deferred premiums ($2372.90), the value of the children's interest was less than $500, and that of Hamilton's nearly $5000, a sum sufficient to cancel all

---

[1] The process is a simple one, as shown by the elementary books on the subject. The policy at the time the association failed (Nov. 1879) had nearly five years to run; suppose it five. Present value of $10,000, five years deferred, at 5 p. c. compound interest is $7835.26. This sum less the value of his children's expectancy, was the value of Hamilton's interest. He was then 51 years old. The mortality table shows that out of 68,842 persons living at that age, 1001 die the first year; 1044, the second year; 1091, the third; 1143, the fourth; and 1199, the fifth; showing that the chances of the children's receiving the insurance the first year were only 1001 in 68,842, or $\frac{1001}{68842}$; the second year, 1044, etc.; and the present value of the expectancy for each year would be the sum expected divided by 1.05, $1.05^2$, $1.05^3$, etc. The present value of the children's expectancy for each year, therefore, was as follows, to wit:

his indebtedness to the company and leave a considerable balance over.

The proceedings which took place in the Circuit Court of St. Louis in the course of liquidating the affairs of the association may be referred to in this connection. In the progress of the case an actuary was appointed by the court to value all the policies of the company then in force. Hamilton presented a petition to the court, claiming that the net value which his policy had on November 10, 1879, (the day the association was declared bankrupt and dissolved,) should be an offset to his note of $3850, and the interest thereon. The actuary made a report exhibiting the particulars relating to the policy, and concluded as follows: "The value of the policy on November 10, 1879, the date of the dissolution of the company by order of the court, was, of the whole $10,000, $7779.95; from which deducting outstanding note of $2372.90 left $5407.05, as the net value, and which amount was allowed by the Commissioner and approved by the Circuit Court."

| | | |
|---|---|---|
| 1st year, $\frac{1001}{68,842} \times \frac{10,000}{1.05} =$ | . . . . . | $138.48 |
| 2nd year, $\frac{1044}{68,842} \times \frac{10,000}{1.05^2} =$ | . . . . | 137.53 |
| 3rd year, $\frac{1091}{68,842} \times \frac{10,000}{1.05^3} =$ | . . . . . | 136.90 |
| 4th year, $\frac{1143}{68,842} \times \frac{10,000}{1.05^4} =$ | . . . . . | 136.60 |
| 5th year, $\frac{1199}{68,842} \times \frac{10,000}{1.05^5} =$ | . . . . . | 136.46 |
| Total for the five years = | . . . . . | $685.97 |
| This deducted from, | . . . . . | 7,835.26 |
| Leaves value of Hamilton's interest, | . . . | $7,149.29 |
| Or; | | |
| If the entire present value, | . . . . . | $7,835.26 |
| Is reduced by the amount of deferred premiums, | . | 2,372.90 |
| The net equitable value is, | . . . . . | $5,462.36 |
| If this be divided in the same proportion as before, | | |
| the value of the children's interest was, | . . | $478.22 |
| And that of Hamilton's, | . . . . . | 4,984.14 |

In November, 1879, his interest would be a little more, and that of the children a little less, than in July. By the subsidiary tables in use by all life insurance companies the above calculation would be greatly shortened and simplified.

It does not appear whether the Circuit Court of St. Louis allowed the set-off or not. But the Circuit Court of the United States dismissed the original bill in the present case, and granted a perpetual injunction against the sale of the defendant's property under his mortgage, but disallowed his demand of reconvention. The form of the decree was as follows: After stating the titles of the bill and cross-bill, the decree was in the words following, to wit:

"In the above cases, after trial and due consideration by the court, it is ordered and adjudged by the court that John F. Williams, superintendent, take nothing on his bill of complaint, and said bill is hereby dismissed.

"And it is further adjudged and ordered that the bill of complaint of W. E. Hamilton be sustained and the injunction of said Hamilton be, and is hereby, made perpetual.

"And it is further ordered that the demand in reconvention of the said Hamilton in his bill of complaint be, and is hereby, rejected without prejudice and of nonsuit." Also, decree for costs.

We think that this decree attained the substantial justice of the case. If not absolutely correct it erred against the defendant, who has not appealed. The counsel for the appellant, however, strenuously contends that compensation could not properly be allowed in this case. In support of his views he refers to the case of *Newcomb* v. *Almy*, 96 N. Y. 308, decided by the Court of Appeals of New York. That case was almost parallel with the present one, and the claim of set-off was disallowed. The suit was brought by the receiver of an insolvent life insurance company against the holder of an endowment policy issued by the company, to recover the amount of a promissory note. The defendant, as in this case, sought to set off the value of his policy against the note. The policy was not yet due, and in case the defendant died before it became due, the amount was payable to his wife. The court assumed that the interests of the assured and his wife were so involved together that they could not be separated; and that it did not yet appear who would be entitled to the insurance, — not adverting to the fact that the interests of all the parties

became fixed by the insolvency of the company, and must be computed as expectancies reduced to present values. It is true, the court does, in the next sentence, concede that the policy had a reserve value, — but asks, " To whom was that value payable?" The plain answer was at hand, that the reserve value of each person's interest was payable to him or her. We cannot but think that if the true character of the interests in question had been brought to the attention of that learned court, it would have come to a different conclusion from that which was reached.

The counsel for the appellant further contends that, by the law of Louisiana, (which must undoubtedly govern the case,) compensation is not allowed against an insolvency in favor of a party whose credit was not due when the insolvency occurred. The Civil Code of Louisiana on the subject of set-off is identical with the Code Napoléon. The article apropos of the point now under consideration is the 1291st of the Code Napoléon, and the 2209th of the Civil Code of Louisiana, and reads as follows: " Compensation takes place only between two debts, having equally for their object a sum of money, or a certain quantity of consumable things of one and the same kind, and which are *equally liquidated and demandable* [exigibles, *i.e.* due]." Now, although upon a bankruptcy declared, all claims against the bankrupt become instantly due (subject, of course, if not matured, to a rebate of interest), and are equally entitled to dividends of the bankrupt assets, yet, in order that a claim may be the cause of compensation, the commentators hold that it must be due [exigible] at the time when the bankruptcy is declared. Touillier, vol. 7, art. 381 ; Demolombe, vol. 28, art. 540. There have also been judicial decisions to the same effect, though not uniformly so. See Merlin Rep. vol. 3, p. 262, tit. Compensation.

But if there are technical reasons in the law of Louisiana for rejecting the defence when set up by way of compensation, it was nevertheless allowed by the Supreme Court of that State, by way of reconvention, in a case exactly like the present. *Life Association of America* v. *Levy*, 33 La. Ann. 1203. Levy was the holder of an endowment policy in the same

company as Hamilton, and in the same district (Shreveport). As in this case the policy had not matured. But the court held that it might be set up by way of reconvention, and that the amount to which the defendant was entitled could be recovered by him and deducted from the amount of his indebtedness to the company. This decision was based on a statute of Louisiana, enacted in 1839, as an amendment to article 375 of the Code of Practice. Article 375 was originally in the following form, to wit: "In order to entitle the defendant to institute a demand in reconvention, it is requisite that such demand, though different from 'the main action, be, nevertheless, necessarily connected with, and incidental to, the same; as, for instance, the demand instituted by the possessor in good faith against him who sues in order to evict him, or for the purpose of obtaining the payment of the improvements made on the premises." The amendment adopted in the act of 1839, and now forming part of the article, provides, "that when the plaintiff resides out of the State, or in the State, but in a different parish from the defendant, said defendant may institute a demand in reconvention against him for any cause, although such demand be not necessarily connected with, or incidental to, the main cause of action." The court in *Life Association* v. *Levy*, say: "The right of the defendant to set up and urge his demand in reconvention against the plaintiff, a resident of the State of Missouri, is, under our law, and the jurisdiction of our State, too plain to require argument;" and reference is made to *Spinney* v. *Hide*, 16 La. Ann. 250; *Spears' Liquidator* v. *Spears*, 27 La. Ann. 642. The court add: "The objections urged by plaintiff to the allowance of the reconventional demand, on the ground that it would be a compensation of plaintiff's demand, and that this cannot take place, because plaintiff is insolvent, and defendant cannot compensate his own debt, but is entitled only to such dividend as may be declared after a final settlement, and because the policy holders of the association are partners and can only sue for a settlement of the partnership affairs, are fully met, discussed, and overruled by the lower judge, and we think properly." The court, in its judgment,

allowed the cash value of the policy, as reported by the actuary, with interest thereon from the time of the adjudication in bankruptcy, November 10, 1879. In our opinion this was a just judgment, and the present case being precisely like, is governed by it.

It is true, the court below disallowed the claim in reconvention ; but it decreed a perpetual injunction against the enforcement of the defendant's mortgage, and thereby did substantial justice. The result which the court reached was correct, though it may have been led thereto on an insufficient ground. We are free to say, however, that if the court below went on the ground that the defendant was entitled to the benefit of compensation, we should be disposed to concur with it, notwithstanding the doctrine laid down by the commentators. We are inclined to the view that where a holder of a life policy borrows money of his insurer, it will be presumed, *prima facie*, that he does so on the faith of the insurance and in expectation of possibly meeting his own obligation to the company by that of the company to him, and that the case is one of mutual credit, and entitled to the privilege of compensation or set-off whenever the mutual liquidation of the demands is judicially decreed on the insolvency of the company. The case of *Scammon* v. *Kimball, Assignee*, 92 U. S. 362, is in concurrence with this view. It was there held, that a banker, having insurance in a company which was rendered utterly insolvent by the great Chicago fire of 1871, by which the banker's insured property was consumed with the rest, had a right to set up the amount of his insurance against money of the company in his hands on deposit. The insurance was not a debt due at the time of the insolvency; it became due afterwards, when the banker had performed all the conditions required in such cases. As the defendant took no appeal, the case is so clearly decided rightly as regards any complaint to be made by the plaintiff against the decree, that we have no difficulty in affirming it.

*Decree affirmed.*