*Decision will be entered under Rule 50.*

C. P. A COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 102463.   Promulgated October 17, 1941.

*John M. Hudson, Esq.*, and *Thomas F. Chawke, Esq.*, for the petitioner.

*Paul A. Sebastian, Esq.*, for the respondent.

OPINION.

SMITH: The narrow question presented by this proceeding is whether the petitioner is a life insurance company within the provisions of section 201 (a) of the Revenue Acts of 1934 and 1936. If it was, it admittedly had no income tax liability for the years 1935 and 1936. Section 201 (a) reads as follows:

SEC. 201. TAX ON LIFE INSURANCE COMPANIES.

(a) DEFINITION.—When used in this title the term "life insurance company" means an insurance company engaged in the business of issuing life insurance and annuity contracts (including contracts of combined life, health, and accident insurance), the reserve funds of which held for the fulfillment of such contracts comprise more than 50 per centum of its total reserve funds.

It is the petitioner's position that, since about 90 percent of its policies carry a provision that in the case of the death of the insured some amount will be paid to his beneficiary, the policy contract is a life insurance contract within the purview of the statute and that it is immaterial that the greater part of the reserves set up by it are to meet its obligations for the payment to the insured of a specific amount upon his discharge or retirement through disability or age. Petitioner furthermore contends that its retirement contract is in effect an endowment contract comparable with endowment contracts issued by life insurance companies. It submits that it is generally recognized that endowment insurance policies providing for the payment of a stated sum at the expiration of a fixed number of years, with a further provision for the payment of a stated sum in the event of the death of the

insured prior to the maturity of the policy, constitute life insurance. See *Carr* v. *Hamilton*, 129 U. S. 252; 37 C. J. 361, 362; *Heffelfinger* v. *Commissioner* (C. C. A., 8th Cir.), 87 Fed. (2d) 991.

It is the respondent's position, on the other hand, that the definition of a life insurance company contained in section 201 (a) of the Revenue Acts of 1934 and 1936 embraces only such a company as is engaged in the "business of issuing life insurance and annuity contracts (including contracts of combined life, health, and accident insurance), the reserve funds of which held for the fulfillment of said contracts comprise more than 50 per centum of its total reserve funds", and that the petitioner does not come within the definition. In the instant case the petitioner did not issue annuity contracts. Neither did it issue contracts of "combined life, health, and accident insurance." The respondent submits that the element of life insurance or the liability of the petitioner to pay an amount of money upon the death of the insured is small compared with its liability to pay retirement insurance. He therefore submits that the reserve fund of the petitioner designated "retirement reserve" is not a reserve fund held for the fulfillment of life insurance contracts.

It is to be noted that the petitioner is not incorporated as a life insurance company under the laws of the State of Michigan. It is incorporated under section 12,402 of the Compiled Laws of the State of Michigan, 1929, which reads as follows:

Sec. 12402. Corporation to insure against loss of position by railway employes, accidents, disability, life, health and to deal in annuities; incorporators. Sec. 14. Any number of persons, not less than thirteen (13), may associate together and form an incorporated company for the following purposes, to-wit:

First, To insure railway employees against loss of position resulting from discharge or retirement;

Second, To insure any person against bodily injury or death by accident, or against disability on account of sickness;

Third, To insure the lives and health of persons and every insurance pertaining thereto, and to grant, purchase or dispose of annuities.

The statutes of the State of Michigan make many requirements of life insurance companies which are not made of the petitioner, such as provisions for loans to policyholders and for a return to the policyholder of a stipulated form of insurance after the policy has been in effect for three full years without the payment of further premiums.

The record shows that the petitioner was originally organized not for the purpose of paying any death benefits whatever, but for the purpose of insuring an employee against a loss of job through discharge or retirement either by reason of disability or of age. The provision of later policies issued by the company whereby the petitioner agreed to pay the beneficiary of the policy an amount for a funeral benefit or a death benefit was strictly subsidiary to the origi-

nal purpose for which the company was organized. It furthermore appears that in a great majority of cases the liability of the petitioner to pay a retirement indemnity was much greater than to pay a funeral or death benefit. Thus its preferred risk policy (exhibit B) shows that the retirement indemnity increased from $500 to a total amount of $5,000 provided the insured had been employed by a railroad company and had kept his policy in force for a period of 45 years. The death benefit in the policy designated "Funeral Benefit" was to be either $500 or the return of all premiums and installments of the annual premium which had been paid up to the time of death, whichever is greater.

With respect to the petitioner's contention that its retirement contract is in effect an endowment contract comparable with endowment contracts issued by life insurance companies, all that needs to be said is that there are many differences between the endowment contract of a life insurance company and the retirement contract of the petitioner. In the case of a life insurance company the insurance company guarantees the payment of the face amount of the policy in case of death prior to the expiration of the endowment period. The endowment policy is a true life insurance policy, payable on the contingency of death. That is not true with respect to the policies issued by the petitioner; for in case of the death of the insured the petitioner guarantees to pay only a funeral or death benefit which in most instances is much less than the amount payable upon the retirement of the insured.

We think that the definition of a life insurance company contained in section 201 does not contemplate reserve funds which are set aside to satisfy the liability of the petitioner to pay a stated amount upon the retirement of the insured. Both the petitioner and the Insurance Department of the State of Michigan have recognized that the retirement reserve maintained by the petitioner was something entirely different from its liability to make payments contingent upon the death of the insured. The retirement reserve was at all times during the years 1935 and 1936 many times as large as the death reserve. The petitioner does not come within the definition of a life insurance company contained in the statute. Cf. *Standard Industrial Life Insurance Co. of Louisiana, Inc.*, 42 B. T. A. 1011; *Kaskaskia Life Insurance Co.*, 22 B. T. A. 210; *National Protective Insurance Co.*, 44 B. T. A. 978.

The determination of deficiencies by the respondent is approved.

Reviewed by the Board.

*Decision will be entered for the respondent.*